## ALEX H. DICKEY v. STATE.

No. A-9265.   July 2, 1937.
(70 Pac. 2d 127.)

Chester Bender, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J.   The information in this case formally charged that Alex H. Dickey did in Custer county, on or about August 18, 1936, commit the offense of larceny of domestic fowls, to wit, six chickens, the property of W. C. Danford.

Defendant was found guilty as charged in the information and his punishment assessed at confinement in the penitentiary for 18 months.

The appeal is from the judgment rendered on the verdict.

The only error assigned and urged is that the evidence was not sufficient to sustain a conviction.

It appears from the testimony that W. C. Danford lived three miles south of the town of Thomas; that during the month of August, 1936, while he was away from home, his son Carl Danford lived on the place.

Carl Danford testified that he lived three-quarters south, a mile west, and a quarter south of his father's place; he and his wife stayed at his father's place during the month of August; that his father had 18 milk cows, and a large number of chickens. That defendant and one of his sons came to his father's place twice a day and milked the cows and he hired another son of the defendant to help do the milking; that on the 18th day of August he with the defendant came from over on the river about 5 o'clock in the evening to his father's place. The defendant's boys were there; witness then went to his wife's folks' place a mile north and a mile west, leaving the defendant and his three sons at his father's place. It was then about sundown. Shortly after he came back and saw the younger Dickey boy going across the field carrying a sack on his back; that witness got in his car and went north to where the boy had gone and found a sack with chickens in it under a highway culvert. Then he called Mr. Gingerich, a neighbor. Shortly afterwards the defendant and two of his boys in a car drove by. Then he left Mr. Gingerich to watch the culvert.

He further testified that the Dickeys, father and sons, worked for the Danfords off and on and helped to care for and milk the cows.

Dave Gingerich testified that he lived about a quarter of a mile from the Danford farm, that Carl Danford came to his place a little after sundown, and they went to a highway culvert, and there found some chickens alive and cackling in a sack; that they watched there a while and saw Alex Dickey and two of his boys pass by in a car; that Danford left, witness stayed there awhile, and Loyd, the younger Dickey boy, came along on foot; witness said to the boy, "Come down here, you are after these chickens," the boy said, "Yes," then witness told the boy to take the chickens back and they went up to Danford's and Carl took six chickens out of the sack.

Loyd Dickey, as a witness for the state, testified that he was 15 years old; that his home was about two miles from the Danford place; that he was at the Danford's farm August 18th, helping do the chores; that Carl Danford left the place about dark and was gone 15 or 20 minutes and while he was gone witness took some chickens and put them in a sack down at the tool shed; then took the sack down to the highway about a quarter of a mile and put it under a culvert, then went back to the milkhouse; that he went home with his father and brother; that he told his father that he had taken some chickens; that he went back to get the chickens and when he came to the culvert Mr. Gingerich was there.

We quote from his testimony as follows:

"Q. Who got the chickens? A. I did. Q. Did anyone help you? A. No, sir. Q. Was your daddy there? A. Yes. Q. What did he do? A. He didn't know I was getting them, he was over at the milk house separating

when I got the chickens. Q. And your father didn't help you? A. No, sir. Q. That is not what you told us before, is it? A. No, sir. Q. You told us your daddy helped you and told you he would whip you if you didn't get them? A. Yes. Q. How far was it from the chicken house to the milk house? A. About 30 steps. Q. When you got back to the culvert you found Mr. Gingerich there? A. Yes. Q. You went to the reform school? A. Yes. Q. How long have you been there? A. A month and three days. Q. Since you have been back you talked to your daddy? A. Yes, yesterday evening. Q. He told you what to swear to? A. No, sir. Q. When did you decide to change your story? A. Yesterday, on the way up here. Q. Now, you testified at the preliminary trial that your father went and got a sack and told you to go and help him get the chickens, didn't you? A. Yes. Q. And when you got down the road your father told you to go back and get them? A. Yes, sir. Q. And told us before that that your father got the chickens? A. Yes. Q. And that was not so? A. No, sir. Q. And your father and brothers were there? A. Yes, sir. Q. And they didn't see you? A. No, sir."

At the close of the state's case counsel for defendant demurred to the evidence "as not sufficient to make a case against the defendant."

On the part of the defense Doyle Dickey testified that he is a son of A. H. Dickey and a brother of Floyd and Loyd Dickey, that he was helping his father and brother Floyd to do the separating in the milk house, that he did not know where his little brother was during the time they were separating, about 30 minutes; that on the way home Loyd having gone about a mile told him he got some chickens and put them under a culvert, and he told their father and their father stopped and told Loyd to go and take them back and tell Carl about it.

The defendant testified in his own behalf that he and his two eldest sons worked for Mr. Danford, and the

oldest boy is still working for Mr. Danford; that they had 18 cows to milk; that on the way home that evening he heard about taking these chickens and he gave Loyd a thrashing and told him to go and take the chickens back and tell Carl about it, then come home with his brother Floyd.

This court will not ordinarily disturb the decision of the trial court in overruling a demurrer to the evidence, or in denying a motion for a new trial, based upon the insufficiency of the evidence to sustain a conviction, and it will not do so where the evidence shows the commission of the offense charged, and from which guilt of the defendant can be fairly inferred, but it will interfere where it clearly appears that the verdict and judgment of conviction are without support in the evidence. In this case the only evidence tending to connect the defendant with the commission of the larceny charged was the testimony of his son, Loyd, on the preliminary examination. On the trial this witness, the boy who took the chickens, stated that his father did not direct or tell him to take the chickens and that his former testimony was not the truth.

It seems to us that an injustice was committed when upon this evidence the defendant was convicted of the larceny. The evidence at best only raises a mere suspicion of the guilt of the defendant, and the demurrer thereto should have been sustained.

Being clearly of the opinion that the verdict and judgment of conviction are without support in the evidence, the judgment of the district court of Custer county is reversed and cause remanded, with direction to dismiss.

DAVENPORT, P. J., and BAREFOOT, J., concur.